**LOEB & LOEB LLP**
Schuyler G. Carroll
Stephen A. Aschettino
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email:  scarroll@loeb.com
         saschettino@loeb.com
         dbesikof@loeb.com
         nweingarten@loeb.com

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Absolut Facilities Management, LLC, *et al*.<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-76260 (AST)<br>Case No. 19-76263 (AST)<br>Case No. 19-76267 (AST)<br>Case No. 19-76268 (AST)<br>Case No. 19-76269 (AST)<br>Case No. 19-76270 (AST)<br>Case No. 19-76271 (AST)<br>Case No. 19-76272 (AST)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

18194795

|   |   |
|---|---|
| 6060 Armor Road, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Adv. Pro. No. 19-08121 (AST) |
| Absolut Facilities Management, LLC and | ) |
| Absolut Center for Nursing and Rehabilitation | ) |
| at Orchard Park, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PRELIMINARY OBJECTION TO PLAINTIFF'S**
**APPLICATION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER[2]**

Absolut Facilities Management, LLC and Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (collectively, the "**Debtors**"), through proposed counsel, Loeb & Loeb LLP, respectfully submit this response (the "**Response**") to the Application for the Entry of Orders Granting a Temporary Restraining Order ("**TRO**") and Preliminary Injunction Enjoining Defendants from Implementing Unapproved Plan of Closure Prior to Approval Under 11 U.S.C. § 366 (the "**Application**") of 6060 Armor Road, LLC (the "**Landlord**"), pursuant to the *Order Requiring Defendants' Response to Plaintiff's Application for Entry of a Temporary Restraining Order* (Dkt. No. 7).

**PRELIMINARY STATEMENT**

1.     At the outset, the Landlord's Application is nothing more than an improper attempt to reargue their request made (and denied) at the hearing on September 18.  At that hearing the Landlord repeatedly asked for an immediate hearing on its then-unfiled motion to prohibit the Debtors from closing the Orchard Park facility.  This Court made clear that an immediate hearing

---

[2] This preliminary objection is filed in response to the portion of the Application seeking a temporary restraining order and other immediate relief.  The Debtors reserve the right to file further objections to the balance of the Application.

18194795                                    2

would not be scheduled, but agreed to schedule a hearing on shortened notice to be held on October 3, if such motion were to be filed by September 20. The Debtors filed such a motion on September 20, and it is scheduled for hearing on October 3 (*see* Case No. 19-76260, Dkt. No. 51) (the "**Closure Motion**"). The Landlord elected not to file anything by that time. The Landlord made a conscious, voluntary decision not to file sooner. The Landlord was fully aware of the consequences of that decision, yet chose not to file anything by the Court's deadline. Now, days later, the Landlord attempts to avoid the consequences of that decision. No circumstances have changed that would excuse the Landlord's untimely filing, and the Landlord has not even attempted to argue that they have, let alone any basis that would be sufficient to satisfy its burden and persuade the Court to alter its decision. Now, days later, the Landlord seeks to reargue and, in an attempt to create urgency, adds the assertion that it should be entitled to an injunction. In apparent recognition that it cannot satisfy its burden, however, the Landlord seeks relief in this procedurally defective manner, rather than a simple motion to reconsider.

2.     The Landlord also failed to satisfy its burden under Local Bankruptcy Rule 9077-1 to establish "a clear and specific showing . . . of good and sufficient reasons why proceeding other than by notice of motion is necessary."[3] The Landlord has offered nothing new, despite the filing of reams of paper. To the contrary, the Landlord simply rehashes its arguments that it is somehow irreparably harmed by the closure. It's just not so. The Debtors intend to file, in the next few days, a motion to reject the Landlord's lease, effective on the date possession of the property is turned over to the Landlord. Upon rejection, the Landlord will regain possession of the property – which is all the Landlord is entitled to. While a different outcome may be more advantageous

---

[3] The Landlord also violates Local Bankruptcy Rule 9077-1 by stating that no previous application was made, when in fact, the Landlord made the almost identical request at the September 18 hearing.

to the Landlord, the only harm that the Landlord could even theoretically suffer is economic, since the Landlord will regain all of its property rights in short order. To the extent it suffers any harm, the Landlord is free to assert a claim for its damages. But money damages are not irreparable harm, and injunctive relief is not available for a claim for money damages.[4]

3. Finally, as discussed below, another bankruptcy court recently rejected nearly identical arguments by landlords under the same circumstances. This Court should reach the same conclusion.

## ARGUMENT

**I.    The Landlord's Argument is Contrary to New York State Law**

4. The Landlord attempts to show that it somehow is entitled to have the Defendants transfer the operating certificate or turnover possession while Orchard Park is still operating as a nursing home. Both assertions are directly contrary to New York State Law, and they would impose an undue burden on the Debtors and their estates. For example, in <u>Woodmere Rehabilitation v. Mark Zafrin, et al</u>., Index No. 602487/15 (N.Y. Sup. Ct. Nassau Cty. June 15, 2017) (Bucaria, J.) (Attached as **Exhibit A** is a copy of the decision) the Court found that the "owner of the real property on which a nursing home is located does not possess 'bed rights.'" The operating certificate may only be issued to a natural person – in this case, Israel Sherman.

5. Accordingly, the Landlord's arguments are misplaced. But the law is clear: the Landlord only owns the real estate – not any of the operations – and New York State law prohibits the Landlord from operating the facility.

---

[4] <u>See</u>, e.g., Smedra Affidavit ¶ 32, at 8 ("Further, the Debtors have shown no indication whatsoever that they will be in a position to compensate Armor Road for the diminished value of Orchard Park or the other facilities affected by Orchard Park's closure.").

6. While it may[5] benefit the Landlord economically to force the Debtors to continue operating Orchard Park until it can find a replacement operator, that outcome would further impair the Debtors and their estates. The Orchard Park facility loses a tremendous amount of money – approximately $5 million in 2018 alone.[6] The estates should not be made to bear the continued expense of operations solely for the Landlord's benefit. This is particularly so, since, as discussed below, both the Debtors and the Landlord have been looking for a replacement operator for several months, and none has surfaced. There is no certainty that a replacement operator could ever be found, but it is certain that the Debtors bear substantial losses every day that the facility remains in operation.

7. Moreover, even if the Debtors were ordered not to take any further steps to facilitate the closure of the facility, there is little they could do to prevent patients from moving out. As required by the DOH, the Debtors provided notice to their patients of their intent to close. Residents are making their own decisions to leave. The Debtors cannot force them to stay, and the Landlord cannot obtain an injunction to force them to stay at Orchard Park.

## II. The Landlord Cannot Satisfy Its Burden to Demonstrate each of the Required Elements to Obtain an Injunction[7]

8. Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue. See,

---

[5] As discussed below, even this is mere speculation and the Landlord has not proven that closure actually will cause harm.

[6] The Debtors' prepetition lender, Capital Finance Group ("CFG"), argues in its joinder that closing the Orchard Park facility will cause a reduction in its collateral package. The opposite is true. Currently, Orchard Park's operations erode the Debtors' assets – on which CFG has a lien – with each day of operation. Closure of Orchard Park will actual benefit CFG's collateral position.

[7] To determine whether to issue a TRO, Courts apply the same analysis used to evaluate a motion for preliminary injunction. See, e.g., Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc., 965 F.2d 1224, 1228 (2d Cir. 1992); Justice v. Kuhnapfel, 985 F. Supp. 2d 334, 339 (E.D.N.Y. 2013); Grandy v. BAC Home Loan Servicing, LP, No. 10-CV-4278 (SLT), 2010 U.S. Dist. LEXIS 102131, at *4 (E.D.N.Y. Sept. 27, 2010).

e.g., L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. of N.Y., No. 18-CV-1902 (NGG) (SMG), 2018 U.S. Dist. LEXIS 58352, at *8 (E.D.N.Y. Apr. 5, 2018) (denying TRO and observing that "[a] TRO 'is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Thus, injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion." JBR, Inc. v. Keurig Green Mountain, Inc., 618 F. App'x 31, 33 (2d Cir. 2015); Sussman v. Crawford, 488 F.3d 136, 140 (2d Cir. 2007).

9. The Landlord cannot satisfy its burden to demonstrate each of the other elements necessary to obtain an injunction. For example, the Landlord asserts that no bond is required essentially because they assert that they will win. The purpose of a bond, however, is to protect the enjoined party in the event the movant does not win. The Landlord entirely ignores the possibility, in fact, the strong likelihood that a delayed closing will cause material financial harm to the Debtors.

10. The balance of the equities do not favor requiring the Debtors to continue losing money every day and operating a facility that has been approved to close and has no possible hope to ever be profitable. Nor do the equities favor the Landlord who have known of the closure since it was announced on September 11,[8] knew of the Court's decision on scheduling and specifically chose not to file by that date required by the Court. Moreover, the Landlord has shown no reason why a hearing on October 3 – just a week from now – is not sufficient, especially considering that two of those days are the Jewish High Holidays when nearly everyone in the Debtors' senior management and counsel will be entirely unavailable. The Landlord has done nothing but

---

[8] The Landlord and CFG complain that the closure was a secret, however, the Debtors filed a declaration disclosing the closure immediately after it was approved by the DOH - hours after the petitions were filed. New York State Law prohibits the Debtors from disclosing anything about the closure until it is approved by the DOH. A press release also was issued at the same time.

speculate, which is clearly not sufficient to support the granting of a TRO.

11. Nor can the Landlord demonstrate a likelihood of success. In fact, the Landlord's best argument on this point is that by filing a motion to approve the closure, the Debtors concede the merits. Nothing could be further from the truth. The Debtors exercised their best business judgment and chose to file the Closure Motion in the interest of full transparency and to avoid a dispute over a simple procedural issues – after the request of all of the parties at the September 18 hearing. As stated in the Closure Motion, the Debtors do not believe any such approval is necessary (see Closure Motion at ¶ 3). The patients that are moving out pursuant to the State-approved and State-supervised closure plan are human beings, not property of the estate.

12. In any event, the Closure Motion was filed – just a few days after the petition date – and the court will decide in just a few more days whether the motion should be approved.

### III. Nearly Identical Arguments were Rejected Recently

13. Recent case law also makes clear that the Court should deny the Landlord's motion. In <u>Senior Care Centers LLC</u>, 18-33967(BJH) (Bankr. N.D. Tex. Jan. 21, 2019), Judge Houser overruled nearly identical objections to those raised by the Landlord here and approved the debtors' rejection. Several landlords and HUD objected alleging that the landlords were about to find a replacement operator, that the landlords and HUD and patients would be better off by requiring the debtors to continue operating until a replacement operator took over, that the debtors' efforts would disrupt negotiations with new operators, that the landlord would be harmed by the failure to pay rent and the reduction in value of the property. The landlords even argued that the debtors' efforts to close were interfering with the landlord's negotiations with replacement operators (attached as Exhibit B are copies of the relevant pleadings).

14. Despite all of these arguments – the very same arguments made by the Landlord – the Court in <u>Senior Care</u> did not require the Debtors to keep operating and losing money. Rather,

the Court approved the rejection.

### IV. The Landlord Has Failed to Procure Another Operator for the Facility Despite Having Spent Months Actively Marketing, with the Assistance of the Best Broker

15.     The Landlord ignores the months of efforts, both by the Debtors and the Landlord, to market the property, all to no avail. Despite omitting this information from its papers, the Landlord – and specifically, Mr. Smedra – is fully aware of those efforts. Indeed, the Debtors have contacted (and been rejected by) numerous parties in an attempt to maximize the value of Orchard Park.

16.     Because the Debtors long ago concluded that Orchard Park needed to be closed and so advised the Landlord, the Debtors also cooperated with the Landlord in its marketing efforts. In this regard, the Landlord hired a broker, Blueprint – the "leading advisory firm exclusively focused on senior housing" – to find a replacement tenant as far back as May. That broker has been marketing the property to others – at a much lower rent – and has not found anyone who is willing to take over the property. The Debtors have fully cooperated with Blueprint and the Landlord.

17.     The Debtors waited patiently for months, yet no one has agreed to take over Orchard Park. The Debtors are now in bankruptcy. They can no longer afford to subsidize the Landlord's search for a new operator through continued operations.

### V. Mere Speculation is Not Sufficient to Support Granting a TRO

18.     The law is clear that speculative allegations of injury are not sufficient to grant a injunctive relief. To the contrary, "[a] moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." National Association for Advancement of Colored People, Inc.

(NAACP) v. Town of East Haven, 70 F.3d 219, 224 (2d Cir. 1995) (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)); Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies"); Ahmad v. Long Island University, 18 F. Supp. 2d 245 (E.D.N.Y. 1998).

19. The only support for the Landlord's motion is the affidavit of Ira Smedra, who speculates as to the *possible* harm that *might* result to the Landlord if Orchard Park is closed. In the first instance, it is submitted that whatever harm *might* befall the Landlord is outweighed by the benefit to the estates and the public in general – which is clearly evidenced by the approval of the closure plan by the DOH. In any event, Mr. Smedra only speculates that the value of the property *might* be reduced – he provides no evidence to prove this, he points to no analysis or economic survey, he provides no expert report or valuation. Mr. Smedra does not purport to be an expert on real estate valuation and does not state that the highest and best use of the property is senior living. Contrary to this speculation, it is equally likely that the closure of the facility will result in a benefit to the Landlord, who can now use the property for anything it desires. Perhaps a different usage would be more profitable. Maybe not, but the point is that the Landlord has done nothing to actually support its speculation and asks this Court to rely on Mr. Smedra's conclusory statements.

20. Mr. Smedra's vague references to what a replacement operator might pay if the facility is closed also is speculation, but in this instance it is hearsay as well. Again, the contrary argument may be made – since Mr. Smedra is marketing all of the Debtors' facilities, a new operator might be much more interested and willing to pay more for the 6 remaining facilities – without the biggest money loser to drag down the entire portfolio.

**VI.    Closing the Orchard Park Facility is in the Debtors' Best Interest, Will Not Cause Problems for the Community, and Will Further the DOH's Goals**

21.     The Debtors are in the process of preparing for the October 3 hearing. At that time, the Debtors will present the testimony of their own employees to demonstrate, among other things, all of the efforts the Debtors have taken to attempt to maximize value, to cooperate with the Landlord and Blueprint, to attempt to reduce expenses in order to keep Orchard Park open, as well as explain the benefits of closing Orchard Park to their other facilities. For example, many residents of Orchard Park moved to the Debtors' Aurora Park facility, which will increase the Debtors' income, while at the same time reducing expenses. The Debtors also will testify to their efforts to ensure the best possible care for residents while they remain and to safely assist the residents who leave. The Debtors also intend to present the testimony of Mr. Smedra and Blueprint who will describe their extensive marketing efforts and the fact that no one has agreed to take Orchard Park – even at the reduced rent they are offering.

22.     Finally, closure of the Orchard Park facility will cause no problems for the community. In fact, the New York State Department of Health has made clear that Erie County, the area in which Orchard Park operates, has hundreds too many beds and the number of beds should be reduced. As a result, the Debtors have worked diligently and directly with the DOH to assist the residents of Orchard Park in moving to other facilities. The Debtors advised residents of the closure and the Debtors cannot stop the residents from moving out. The residents are entitled to their choice and can move at any time they choose.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully submit that the Court deny the Landlord's request for a telephonic hearing and a TRO in its entirety (for the second time). In the alternative, should the Court determine a hearing is appropriate, that hearing should be conducted on October 3, at the time the Court has already advised the parties.

Dated: September 25, 2019  
       New York, New York

LOEB & LOEB LLP

/s/ Schuyler G. Carroll  
Schuyler G. Carroll  
Stephen A. Aschettino  
Daniel B. Besikof  
Noah Weingarten  
345 Park Avenue  
New York, NY 10154  
Tel: (212) 407-4000  
Fax: (212) 407-4990  
scarroll@loeb.com  
saschettino@loeb.com  
dbesikof@loeb.com  
nweingarten@loeb.com

*Proposed Counsel to the Debtors*